## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **HAROLD E. STRICKLAND,** | ) | |
| Plaintiff | ) | Civil Action No.: 7:12cv00559 |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **MIKE MONDULE, et al.,** | ) | By: PAMELA MEADE SARGENT |
| Defendants | ) | United States Magistrate Judge |

The pro se plaintiff, Harold E. Strickland, is a Virginia Department of Corrections, ("VDOC"), inmate, who previously was an inmate at the Danville City Jail, ("Jail"). In this case, Strickland has sued Danville Sheriff Mike Mondule, the Jail and multiple Sheriff's Department officers under 42 U.S.C. § 1983 and state law claims, alleging that, while he was in segregation for a six-month period at the Jail, he was denied out-of-cell exercise with the exception of two occasions. This case was tried to the court on April 17, 2014. The matter is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned now submits the following report and recommended disposition.

## *I. Facts*

Strickland brings this action against defendants Mondule, the Jail, Sgt. Bryant Booth, Sgt. Richard Callahan, Sgt. Jarrett Milam, Sgt. Mike Bray and Chief Deputy Steve Salmon, alleging that he was denied out-of-cell exercise while he was held at the Jail. Strickland testified that he was held at the Jail in segregation

in D block from November 7, 2010, to April 29, 2011. According to Strickland, he was placed in segregation because he was charged with having cigarettes on him when he went through intake at the Jail. Strickland claims that this disciplinary charge was never heard, but he admits that he never contested being held in segregation because his medical condition, Crohn's disease, would put him at risk for being injured if he were to have been housed in general population. Strickland explained that the Crohn's disease caused him to expel very foul smelling gas. Because of this, Strickland said that he preferred to remain in segregation in a cell by himself.

Strickland testified that, while being housed at the Jail, he was given out-of-cell recreation on only two occasions: on November 10, 2010, and, again, around March 21, 2011. Strickland testified that he was never offered out-of-cell recreation on any other occasion. He also specifically testified that he never refused out-of-cell recreation if it was offered to him. Strickland further testified that, if any of the Jail's log books or records showed that he was offered and refused recreation, they were in error. In fact, Strickland testified that it appeared many of the entries in the Jail's log book had been falsely created to make it appear as if he had been offered and refused exercise.

Strickland also testified that he filed "multiple" grievances while incarcerated at the Jail that were never responded to by Jail officials. Strickland stated that the Jail's Grievance Procedure did not inform him as to what he should do if the Jail did not respond to a grievance. The Jail's Grievance Policy, ("Policy"), was admitted into evidence as Plaintiff's Exhibit No. 23. The Policy states that grievances must be in writing on a specific "grievance form," signed by

the inmate and returned to the sergeant on duty. The sergeant, or other Jail supervisor if the sergeant is the subject of the grievance, will then respond to the grievance. The Policy does not set any deadline for filing a grievance or for the response to the grievance. The Policy allows an appeal of the sergeant's decision to the Jail Administrator, but does not set any deadline for filing an appeal. There is no further appeal past this step. The Policy states: "The procedure for grievances must be followed completely."

Strickland testified that he filed three or four grievances while at the Jail concerning the lack of out-of-cell exercise, to which Jail officials did not respond. In particular, Strickland testified that he filed a grievance on January 27, 2011, because another segregation inmate was taken to recreation, and Officer Jones refused to allow Strickland recreation. Strickland said that he never received any response to this grievance. Strickland stated that he remembered this specific grievance even though no one responded to it because he was mad that he was not allowed recreation on that day.

Strickland testified that Plaintiff's Exhibit No. 13 was the only grievance he filed regarding the lack of recreation to which the Jail actually responded. Strickland admitted that this grievance was not filed until January 10, 2013 – almost two years after Strickland completed his stay at the Jail and almost two months after filing this suit. Strickland's grievance was denied initially by Sgt. Callahan and on appeal by Chief Deputy Salmon. In response, both Callahan and Salmon stated that the Jail's records showed that Strickland had been offered – and had refused – recreation.

Strickland testified that Crohn's disease often caused him to become constipated. He said that he needed to exercise regularly to help his bowels to move. Strickland stated that, while he was incarcerated at the Jail, the lack of exercise caused him to go seven to eight days without a bowel movement. Strickland testified that this constipation resulted in him getting a severe bacterial infection in his intestines, from which he suffered the entire period of his incarceration at the Jail. He stated that this infection caused him great abdominal pain and suffering. He stated that he often would bleed when attempting to have a bowel movement. He also stated that he often would vomit after eating because his intestines had become obstructed and could not move his food.

Toney Leon Childress testified at the hearing by video conference. Much of Childress's testimony revolved around whether he had signed an affidavit that Strickland previously had filed with the court. Regardless, Childress testified that he was held in segregation in D block at the Jail for three to four weeks while Strickland was housed there. Childress stated that he proofed many of the grievances that Strickland filed while at the Jail, including grievances complaining of the lack of out-of-cell exercise. Childress stated that he would proof these grievances and then Strickland would give them to Sgt. Callahan.

Childress testified that he was never offered any out-of-cell recreation while held in segregation in D block in the Jail. "As far as getting out of the cell, that wasn't going to happen" while in D block, Childress said. According to Childress, he also was housed for a period of time at the Jail in C block. He said that, while housed in C block, there were periods of time when he was not offered any recreation. He also testified that, while he was housed in C block, there was never

an occasion when everyone in the block took recreation at the same time. Childress also testified that the Jail had two exercise rooms, with one larger than the other. He stated that the 15 to 20 people housed in a block at the Jail could not fit into these two rooms to exercise at the same time. Childress also testified that, in his experience, only one block went to recreation at a time.

Sgt. Mike Bray testified that he had worked at the Jail for 13 years, with six to seven of those years at his current rank of sergeant. According to Bray, he has supervised recreation the entire time that he has worked at the Jail. Bray explained that inmates housed in segregation were in their cells 24 hours a day, and inmates housed in general population were out of their cells and had access to the day room in their block from 7 a.m. to 11 p.m. every day. Bray testified that the Jail's policies and procedures required inmates housed in segregation to receive only one hour of recreation time a week no matter how long they had been held in segregation. Bray testified that the Jail staff did not have any routine or assigned time of the week during which inmates in segregation were allowed out-of-cell recreation. Bray said that the shift commander would make the decision who would receive recreation and when it would be offered. Bray admitted that, in his signed, sworn Answers to Interrogatories filed with the court on October 22, 2013, he said that he did not know who would make this decision. Bray's discovery responses on file with the court confirm this. *See* Docket Item No. 97 at 5.

Bray testified that the Jail kept a log book that showed who was offered recreation and when. He also stated that the Jail staff logged when an inmate refused recreation. Bray said that the Jail's log book should show if an inmate was offered recreation, the time the inmate was pulled from the cell and the time the

inmate returned to the cell or that the inmate refused recreation. Bray also testified that Jail workers were not allowed to allow male and female inmates to take recreation at the same time. Bray admitted, however, that copies of the Jail's log books presented to him in court showed male and female inmates taking recreation at the same time on at least two occasions. Bray explained that the records were either wrong or that someone had pulled male and female inmates for recreation at the same time in violation of Jail policy. He said he was not aware of any occasion on which male and female inmates had taken recreation together.

Bray testified that the Jail was not understaffed when Strickland was housed there and that recreation was offered as required regardless of staffing levels. He also testified that he did not know of any reason preventing Strickland from receiving recreation when he was housed at the Jail in segregation.

Sgt. Bryant Booth testified that he had worked at the Jail for the past 15 years and had supervised inmates taking recreation for this entire time. He stated that he also had worked at the Jail for a 10-year period earlier in his career. Booth testified that Jail policy required inmates held in segregation to have one hour of out-of-cell recreation each week. Booth said that he was trained regarding the Jail's recreation policy when he first began working at the Jail. Booth said that when he started his shift for the week he would look at the Jail's log book to see which inmates had received recreation that week and which inmates he was required to offer recreation. Booth stated that the inmates themselves would often tell him if they had not received recreation. Booth testified that any refusal of recreation should be logged and that there was no acceptable reason for not logging an inmate's refusal to take recreation.

Booth also testified that, in his 25 total years working at the Jail, he had never witnessed male and female inmates together in recreation. Booth admitted, however, that copies of the Jail's log books presented to him in court showed that he had made entries in June of 2010 showing that male and female inmates had taken recreation together on at least two occasions.

Booth testified that he had never denied recreation to an entire block of the Jail. Booth also said that recreation was never offered on weekends or holidays because the Jail was staffed by only five or six workers a shift on these days.

Sgt. Richard Callahan testified that he has worked at the Jail for 19 years and has supervised recreation for this entire period. Callahan said that Jail policy requires all inmates, whether housed in segregation or in general population, to receive one hour of recreation time each week. Callahan said that the only reasons he knew of to justify denying recreation to segregation inmates would be for safety or security reasons or in an emergency. While Callahan conceded that the Jail was, on occasion, short on manpower, he stated that the Jail never failed to provide recreation to its inmates because of a lack of manpower. Callahan testified that he could not recall any reason why Strickland would not have been offered out-of-cell exercise when he was at the Jail.

Callahan testified that the sergeant on duty on any given weekday would decide who would receive recreation and when they would receive it. He said that there was no set schedule for what block went to recreation when. Callahan said that when he started work for the week he looked at the log book and gave recreation to those inmates who had not yet received recreation for the week.

Callahan testified that he reviewed the recreation log records regularly, and he would know whether an inmate had or had not been offered recreation in any given week. Callahan stated that he did not recall ever denying recreation for the inmates housed in segregation or that any block of the Jail was denied recreation for any period of time. Callahan testified that he knew of no reason why an inmate should be denied out-of-cell recreation.

Callahan stated that the Jail's log book should show every time an inmate was offered recreation and whether the inmate went to recreation or refused to go. Callahan admitted that in his signed, sworn Answers to Interrogatories he incorrectly stated that Jail policy only required an inmate's refusal to take recreation to be logged. Callahan's discovery responses on file with the court confirm this. *See* Docket Item No. 95 at 2.

Callahan testified that Strickland was placed in segregation at his request upon intake based on his Crohn's disease. Callahan admitted that Strickland was found in possession of cigarettes and a lighter upon his intake at the Jail, but he said it was not uncommon for a person to come in to the Jail in possession of prohibited products. Callahan testified that he did not charge Strickland with any disciplinary infraction as a result of his possession of cigarettes and a lighter on intake.

Sgt. Jarrett Milam testified that he has worked with the Danville Sheriff's Office for the past 12 years. Milam stated that his position at the Jail had included making decision about providing recreation to inmates since 2003. Milam testified that Jail policy required that all inmates receive one hour of out-of-cell recreation

each week. Milam also testified that Jail policy required the Jail staff to offer recreation to every inmate every week and to log whether the inmate participated in recreation or refused. Milam specifically testified that recreation was only logged when it was offered to an inmate. He stated that, if there was no log entry for a Jail block or inmate on a specific date, that block or inmate was not offered recreation on that date.

Milam said that recreation was offered only on the day shift on weekdays, Monday through Friday. Milam testified that it was possible that an inmate might not receive recreation if he or she were restricted for disciplinary reasons. Milam stated that he was not aware of any Jail employees ever being disciplined for not properly logging recreation. Milam testified that, while Strickland was at the Jail, he requested Strickland to move to general population on more than one occasion. Each time, Milam said, Strickland refused due to his intestinal problem.

Lt. Col. Steve Salmon testified that he had worked with the Danville Sheriff's Office for 38 years. Salmon stated that Jail policy called for recreation to be offered as manpower allowed. He said that all Jail employees had been trained on Jail policies regarding recreation and that all Jail employees should have known to log whether an inmate accepted or refused recreation. Salmon stated that, if recreation was not offered, there should not be any documentation. Salmon admitted that, if the Jail's log book showed no records for recreation for a weeklong period, that was a gross departure from operating procedures.

Salmon stated that, once Strickland filed this lawsuit, he went back and reviewed the Jail's recreation log books. Salmon said, "I saw the same thing you

saw," explaining that he noticed that there was missing documentation or times when recreation was not documented as required by Jail policy. Salmon admitted that there was some weeks in the logs that did not show that inmates in D block had been offered exercise, but he said he could not remember the exact dates. Salmon also admitted that the Jail could not find any recreation logs for the D block for some of the period of time that Strickland was housed there.

Salmon said that the Jail used to allow outside recreation on the Jail roof, but that practice had been discontinued several years ago. Salmon also said that male and female inmates were not allowed to take recreation together. He said that Jail policy required all inmates to receive one hour of out-of-cell recreation each week. Salmon testified that he had no knowledge of any period when inmates at the Jail were not offered exercise as required.

Salmon testified that Strickland was not placed in segregation because of any disciplinary action. In fact, he said that it would have been advantageous to the Jail if Strickland had been moved to general population. He also said that no one at the Jail acted with deliberate indifference toward Strickland.

Danville Sheriff Michael Mondule testified that, as sheriff, he was responsible for the policies approved and implemented at the Jail, but he said that he rarely had any direct contact with inmates. Mondule stated that he has been sheriff of the city of Danville since January 1, 2010. Mondule testified that he was not personally aware that Strickland was housed at the Jail from November 7, 2010, to April 29, 2011. He also stated that he was not aware that Strickland suffered from Crohn's disease.

Mondule said that all Jail workers were trained regarding Jail policies when they were hired to work at the Jail. This training was done by the sergeants, he said. Mondule stated that the Jail policy of providing one hour of out-of-cell recreation each week to each inmate had been in place since he became sheriff in 2010. He said that the VDOC standards required each inmate to have one hour of out-of-cell recreation each week.

Mondule stated that Jail policy did not require any certain block to be offered recreation at any certain time during the week. He also said that, other than in the rare case that an inmate was being combative, there would be no reason to deny an inmate an opportunity for out-of-cell recreation. He further stated that any denial of an opportunity for out-of-cell recreation should be documented in the Jail's log books. Mondule testified that he was not aware of any inmate at the Jail ever being denied out-of-cell recreation. He stated that when recreation was offered, an inmate's acceptance or refusal of recreation should have be documented. Mondule testified that he was not aware until this case was filed that the Jail's Inmate Policies and Procedures stated that recreation would be offered only when manpower allowed. Mondule stated that the Jail currently had 82 employees and that in 2010 to 2011 the Jail had 81 employees.

Mondule stated that, if an inmate had been denied recreation for two months, it would be a gross departure from Jail policy and would justify disciplinary actions against the responsible employees. He also stated that, if this occurred, numerous Jail officers would have to have known about it based on their constant review of the Jail's log books. He said that any inmate who was denied recreation

could have filed a grievance. He also said that he was not aware of Strickland filing any grievances while he was housed at the Jail.

Mondule said that each of the other defendants were Sheriff's Office employees when he was elected sheriff. He stated that each officer of the Sheriff's Office must recertify to be an officer every two years. He stated that his office sends out periodic emails to employees as reminders of Jail policies. Mondule testified that he was not aware of anyone altering the Jail's log books and that he would not tolerate anyone doing so.

In discovery, the defendants produced copies of the Jail's log books showing when recreation was offered and if taken or refused by the inmates. (Docket Item No. 171, Att. 1-16; Docket Item No. 183, Atts. 17 at 8-14.) By agreement, these records will be considered as evidence on Strickland's claims. These copies contain few records showing that recreation was offered to the inmates of D block while Strickland was incarcerated there. Records for the week of November 8, 2010, state that Strickland participated in out-of-cell recreation with all other inmates in the D block from 2 to 3 p.m. on November 10, 2010. (Docket Item No. 183-17 at 8.) Records for the week of November 28, 2010, show that recreation was offered to numerous blocks and dorms, but there is no record of recreation being offered to D block. There are no records showing recreation was offered to anyone for the week of December 5, 2010. During the week of December 12, 2010, recreation was offered to numerous blocks and dorms, but there is no record of recreation being offered to D block. The same is true for the week of December 19, 2010. The records state that Strickland was offered and refused out-of-cell

recreation along with all other inmates in D block on December 27, 2010. (Docket Item No. 183-17 at 9.)

The records also state that Strickland was offered out-of-cell recreation on January 6, 2011, but he refused. (Docket Item No. 171-16 at 32.) The records do not show that anyone was offered recreation for the week of January 9, 2011. During the week of January 16, 2011, recreation was offered to numerous blocks and dorms, but there is no record of recreation being offered to D block. For the week of January 23, 2011, the records state that Stickland refused out-of-cell recreation on January 27. (Docket Item No. 171-16 at 23.) During the week of January 30, 2011, recreation was offered to numerous blocks and dorms, but there is no record of recreation being offered to D block. The same is true for the weeks of February 6, February 13, February 20, February 27, March 6, March 13 and March 20.

The records state that Strickland took out-of-cell exercise with all the inmates of D block from 12:40 to 1:40 p.m. on Thursday, March 31, 2011. (Docket Item No. 183-17 at 12.) Despite the uncontradicted evidence that Jail policy required inmates to receive only one hour of recreation each week, the records state that D Block also was offered out-of-cell recreation again the very next day, Friday, April 1, and that every inmate, including Strickland, refused. (Docket Item No. 183-17 at 13.) The records show that recreation was offered to numerous blocks and dorms during the week of April 3, but there is no record of recreation being offered to D block. The same is true for the weeks of April 10 and April 25. The records show that D block was offered out-of-cell recreation on April 16,

2011, and that every inmate, including Strickland, refused. (Docket Item No. 183-17 at 14.) Strickland was transferred from the Jail on April 29, 2011.

## II. Analysis

The Prison Litigation Reform Act, ("PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility, until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a) (West 2012). "The exhaustion requirement is mandatory, and courts lack the authority to waive that requirement." *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. Feb. 18, 2011) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).

The undersigned, by Report and Recommendation entered March 10, 2014, previously recommended that the court grant summary judgment in the defendants' favor on Strickland's claim based on Strickland's failure to exhaust his administrative remedies prior to filing suit. Strickland objected to the Report and Recommendation, and, by Order entered April 11, 2014, the court took the Report and Recommendation and objections under advisement pending the bench trial of the claim. (Docket Item No. 174.)

Based on the evidence presented at trial, the undersigned again recommends that judgment be entered in the defendants' favor on Strickland's § 1983 claim based on Strickland's failure to fully exhaust his administrative remedies prior to filing suit. The evidence presented at trial on this issue was, in large part,

consistent with that presented on the earlier motion for summary judgment.[1] Strickland's own testimony shows that he failed to fully exhaust his administrative remedies prior to filing this suit. While Strickland testified that he filed several grievances concerning the lack of out-of-cell exercise while he was incarcerated at the Jail, he admits that he received no response to any of these grievances. This court previously has held that Strickland's claim that he submitted a grievance form to an officer and received no response did not satisfy his duty to exhaust available remedies. *See Strickland v. Wang*, Civil Action No. 7:11cv00358, Report and Recommendation, M.J. Ballou, Feb. 20, 2013 (citing *Zander v. Lappin*, 2012 WL 3138012, at *4 (E.D. N.C. Aug. 1, 2012), *aff'd*., 2013 WL 474536 (4th Cir. Feb. 7, 2013); *Peoples v. SCDC*, 2008 WL 1902718, at *1 (D. S.C. Apr. 28, 2008) (finding that a returned and unprocessed grievance does not render remedies "unavailable")). The only other grievance form Strickland testified that he submitted regarding the lack of out-of-cell exercise was submitted on January 10, 2013 – almost two months after the filing of this suit on November 15, 2012. This court also has held that the PLRA requires that a prisoner exhaust administrative remedies prior to bringing a lawsuit. *See Strickland v. Wang*, Civil Action No. 7:11cv00358, Report and Recommendation, M.J. Ballou, Feb. 20, 2013 (citing 42 U.S.C. § 1997e(a)) (retroactive attempt to pursue grievance process does not satisfy the PLRA exhaustion requirement)). That being the case, the undisputed evidence shows that Strickland failed to exhaust his administrative remedies as required.

---

[1]  Much ado was made at trial over whether the affidavit from witness Childress that Strickland submitted in opposition to the defendants' motion for summary judgment was the affidavit that Childress signed under oath. Childress testified that it was not. Regardless of whether the affidavit submitted by Strickland was the affidavit Childress actually signed, Childress testified that the affidavit submitted was factually accurate.

The defendants also argued on summary judgment and at trial, that Strickland's claims contained in this action should be dismissed as barred by the doctrine of res judicata. Previously, Strickland had filed suit in this court, against defendants Mondule, Bray and Milam under 42 U.S.C. § 1983 based, in part, on claims that he was held at the Jail from November 8, 2010, to May 1, 2011, and only allowed out-of-cell recreation on two occasions. (Civil Action No. 7:11cv00358, Docket Item No. 1-1 at 10). Strickland claimed that this lack of exercise exacerbated his Crohn's disease. By Order entered August 29, 2011, Strickland was allowed to amend his claims to add defendants Callahan and Booth, among others, and to add more details regarding his claims under the Eighth and Fourteenth Amendments for lack of out-of-cell exercise. (Civil Action No. 7:11cv00358, Docket Item No. 12). By Order entered December 8, 2011, Strickland was ordered to file an Amended Complaint. (Civil Action No. 7:11cv00358, Docket Item No. 18). In this Amended Complaint, (Civil Action No. 7:11cv00358, Docket Item No. 19), Strickland abandons his claims against any of the defendants in this case based on a lack of out-of-cell exercise. By Opinion and Order entered January 27, 2012, the court recognized that the only claims remaining were Strickland's claims based on inadequate medical treatment. (Civil Action No. 7:11cv00358, Docket Item Nos. 22-23). By Memorandum Opinion and Order entered March 7, 2013, Strickland's claims were dismissed for failing to exhaust administrative remedies prior to filing suit as required by 42 U.S.C. § 1997e(a). (Civil Action No. 7:11cv00358, Docket Item Nos. 140, 141).

At the April 17 trial, Strickland asserted that he amended his Complaint in the earlier case to remove any claims against the defendants for lack of out-of-cell exercise at the direction of the magistrate judge. The court's records show that by

Memorandum Opinion and Order entered December 8, 2011, the magistrate judge held that Strickland's Complaint improperly joined claims against 16 different parties at two different correctional institutions which did not arise out of the same transaction or occurrence. Indeed, the magistrate judge ordered that Strickland file an amended complaint containing only those claims which arose out of "the same transaction, occurrence, or series of transactions or occurrences, and they must contain a question of law or fact common to all defendants." (Civil Action No. 7:11cv358; Docket Item No. 17 at 4.) The Memorandum Opinion further stated:

> This Memorandum Opinion does not address Strickland's claims on the merits, and it does not mean that he loses his right to litigate any of the claims he has pled to date solely by virtue of this determination. Strickland may file completely separate lawsuits naming such defendants and claims. He simply may not litigate all of his unrelated claims against all these defendants in this single suit.

(Civil Action No. 7:11cv358; Docket Item No. 17 at 5.)

Thus, the court did not address Strickland's claims against these defendants based on a denial of out-of-cell exercise on the merits. By filing his claims against the defendants for lack of out-of-cell recreation in this separate suit, Strickland simply has followed the court's orders. Therefore, I find that these claims are not barred by the doctrine of res judicata.

I now turn to address Strickland's § 1983 claim on its merits.

> To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law.

*Cheatham v. Lynchburg City Jail*, 1992 WL 333911, at *7 (W.D. Va. Nov. 5, 1992). While local governing bodies are considered "persons" that can be sued under § 1983, local jails are not persons within the meaning of § 1983. *See McCoy v. Chesapeake Corr. Ctr.*, 788 F. Supp. 890, 892-93 (E.D. Va. 1992). That being the case, Strickland cannot prevail on his § 1983 claim against the Jail.

As pointed out by the defendants in their arguments, it is unclear as to whether Strickland was held at the Jail as a pretrial detainee or a sentenced prisoner during the relevant period. If considered a pretrial detainee, Strickland's rights would be governed by the Due Process Clause of the 14th Amendment to the U.S. Constitution. *See Hill v. Nicodemus*, 979 F.2d 987, 990 (4th Cir. 1992). If a sentenced prisoner, Strickland's rights would be governed by the prohibition against cruel and unusual punishment under the Eighth Amendment. *See Hill*, 979 F.2d at 990. "As a practical matter, the contours of pretrial detainees' rights under the Due Process Clause are coextensive with the Eighth Amendment protections applicable to convicted inmates." *Fitzgerald v. Sprinkle*, 2010 WL 3292657, at *1 (W.D. Va. Aug. 19, 2010) (citing *Hill*, 979 F.2d at 991-92).

In order to prevail on an Eighth Amendment claim related to conditions of confinement, a prisoner must establish both "a serious deprivation of a basic human need" and "deliberate indifference to prison conditions on the part of prison officials." *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993). The proper inquiry in evaluating the constitutionality of the conditions of confinement of a pretrial detainee is whether the condition amounts to punishment of the detainee. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). The Fourth Circuit has

recognized that withholding all exercise opportunities from a prisoner over an extended period of time violates the Eighth Amendment's prohibition on cruel and unusual punishment. *See Mitchell v. Rice,* 954 F.2d 187, 191-92 (4th Cir. 1992); *see also Sweet v. S. C. Dep't of Corrs.*, 529 F.2d 854, 865-66 (4th Cir. 1975) (two one-hour exercise periods per week may amount to cruel and unusual punishment when extended over a period of years of confinement). While penological considerations may, in certain circumstances, justify placing restrictions on a prisoner's ability to exercise, *see Mitchell,* 954 F.2d at 192, the uncontradicted evidence offered in this case is that there was no security or other penological reason for not allowing Strickland out-of-cell exercise.

Here, Strickland alleges that he was offered and received out-of-cell exercise on only two occasions while housed at the Jail for more than five months. Based on the evidence presented before the court, I am persuaded that Strickland was, in large part, denied out-of-cell exercise while an inmate at the Jail from November 2010 to April 2011. Strickland testified unequivocally that he was offered and participated in out-of-cell recreation on only two occasions while housed at the Jail. Strickland testified that any record which showed that he was offered and refused out-of-cell recreation was false. The witness Childress's testimony supported Strickland's claim, in that he, too, testified that he was not offered out-of-cell recreation when he was held in the D block at the Jail.

While each of the defendants testified that it was Jail policy to allow each inmate one hour of out-of-cell recreation each week, none of the defendants offered any testimony of any specific occasion on which they remembered offering Strickland out-of-cell exercise and his refusing. Instead, the defendants' testimony

relied on the Jail's log books. Each defendant confirmed that Jail policy required them to make an entry in the log book showing each time an inmate was offered recreation and whether the inmate participated or refused.

Each of the defendants testified that the Jail had no set policy as to which portion of the Jail was to be offered recreation on any certain day. The defendants, with the exception of Mondule, all testified that when they started their workweek, they would look at the Jail's log book to determine which inmates had received recreation for a particular week and which inmates still needed to be offered recreation. Each of the defendants testified that, if there was no record for a particular block or inmate for that week, they knew that the block or inmate had not been offered recreation.

Assuming the accuracy of the Jail's recreation log book entries, the entries show that Strickland was offered out-of-cell recreation on only seven occasions during the 25-week period that he was held at the Jail. If this were the case, based on the fact that Strickland was held in a segregation cell, which he testified was too small to allow any type of physical exercise, for 24 hours a day for seven days a week, I would find a serious deprivation of a basic human need.

Based on the testimony of the defendants, however, I doubt the accuracy of the Jail's log book entries. In particular, each of the defendants testified that they were not aware of recreation being denied to any inmate or block of the Jail for any given week during their employment at the Jail. The defendants also testified that Jail policy prohibited male and female inmates from being allowed to take recreation at the same time. Each of them further testified that, to their knowledge,

male and female inmates had never taken recreation at the same time during their employment at the Jail. Despite this testimony, the Jail's log book entries submitted into evidence show that there were multiple weeks where there was no record of recreation being offered to Strickland, his D block or other blocks or dorms of the Jail. The defendants also admitted that the Jail's log books showed that male and female inmates participated in recreation at the same time on numerous occasions.

Based on this evidence, I find Strickland's testimony that the defendants offered him out-of-cell recreation on only two occasions while incarcerated at the Jail credible. Finding that Strickland suffered this deprivation does not end the inquiry, however.

"…[F]or prison conditions to rise to the level of unconstitutional punishment, '"there must be evidence of a serious medical and emotional deterioration attributable to' the challenged condition."'" *Strickler*, 989 F.2d at 1380 (quoting *Lopez v. Robinson*, 914 F.2d 486, 490 (4th Cir. 1990) (quoting *Shrader v. White*, 761 F.2d 975, 979 (4th Cir. 1985))). Strickland claims that the lack of exercise he experienced at the Jail exacerbated his Crohn's disease, resulting in him getting a severe bacterial infection in his intestines. Strickland testified that this infection caused him great abdominal pain and suffering and severe constipation. Strickland did not, however, produce any medical evidence to support his claim that a lack of exercise had caused an exacerbation of his Crohn's disease.

In his Complaint, (Docket Item No. 1), Strickland admitted that he had suffered an exacerbation of his Crohn's disease before his incarceration at the Jail. In fact, he stated that he was released from the hospital immediately before his booking into the Jail on November 7, 2010. In his Complaint, Strickland alleged that the bacterial infection in his intestines was caused by not receiving adequate follow-up care by a gastroenterologist. While the court has no reason to discredit Strickland's testimony that the symptoms of his Crohn's disease worsened while incarcerated at the Jail, the court has no medical evidence before it to show that this exacerbation was due to a lack of exercise. Therefore, I find that Strickland has not met his burden to show that he suffered a serious medical deterioration due to deprivation of out-of-cell exercise. That being the case, I cannot find that this deprivation rose to the level of unconstitutional punishment.

Considering Strickland's claim under the Eighth Amendment, Strickland also is required to prove a subjective element. *See Wilson v. Seiter*, 501 U.S. 294 (1991). In Eighth Amendment cases involving conditions of confinement, deliberate indifference may be shown when prison officials were aware of the objectively cruel conditions and failed to remedy them. *See Lopez*, 914 F.2d at 490. The evidence presented persuades the court that each of the defendants, other than Mondule, knew Strickland was being denied out-of-cell exercise and took no steps to remedy it. Mondule, himself, testified that if recreation was being denied to Strickland, each of the defendants would have to know of the deprivation because they reviewed the Jail's log books daily. Each of the other defendants confirmed this in their testimony that they reviewed the log books when they started their shift for the week. Furthermore, having rejected the defendants' testimony that Strickland was offered recreation and refused to participate for every week of his

incarceration other than on two occasions, I find that the evidence shows that the defendants, other than Mondule, were aware of the deprivation and failed to remedy it.

In Fourteenth Amendment cases involving conditions of confinement, to establish whether a particular condition of a pretrial detainee's confinement is constitutionally impermissible "punishment," he must show either that it was (1) imposed with an express intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case, an intent to punish may be inferred. *See Hause v. Vaught*, 993 F.2d 1079, 1085 (4th Cir. 1993) (citing *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)). I find that there is no evidence before the court that the defendants denied out-of-cell recreation to Strickland with the express intent to punish him. However, I do find that the evidence shows that the denial of out-of-cell recreation to Strickland was not reasonably related to any legitimate nonpunitive governmental objective. Although the defendants testified that out-of-cell recreation may be denied to an inmate for various reasons, including lack of manpower, safety and security, in emergency situations, when inmates have disciplinary restrictions and for combative behavior, none of them testified that Strickland was actually denied out-of cell-recreation for any of these reasons. Therefore, I find that an intent to punish Strickland may be inferred.

Based on Mondule's testimony that he did not participate in pulling inmates for recreation at the Jail and did not participate in the decision-making as to which inmates would receive recreation on which days, I find that Strickland has failed to prove that Mondule participated in the denial of out-of-cell exercise. While Sheriff

Mondule is ultimately responsible for the management of the Jail, this responsibility, alone, does not confer liability under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Lopez*, 914 F.2d at 494.

Regarding Strickland's state law negligence and gross negligence claims against Mondule and Salmon, I will recommend the court enter judgment in favor of the defendants. Even after the trial of this case, the court remains unclear as to the basis for asserting state law negligence and gross negligence claims against these defendants. It appears that Strickland argues that VDOC regulations required the defendants to provide each inmate at the Jail with at least one hour of out-of-cell recreation a week and that the defendants' failure to do so amounted to negligence or gross negligence. While that may be the case, I find that these claims, too, must fail based on Strickland's failure to prove causation.

## PROPOSED FINDINGS OF FACTS AND
## CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.    Strickland failed to fully exhaust his administrative remedies prior to filing this action;

2.    Strickland's claims are not barred by the doctrine of res judicata;

3.    The Jail is not a "person" who can be sued directly under §1983;

4. Defendants Booth, Callahan, Milam, Bray and Salmon denied Strickland out-of-cell recreation except for two occasions while he was incarcerated at the Jail;

5. This denial of out-of-cell exercise amounts to a deprivation of a serious human need;

6. Strickland failed to produce evidence that the exacerbation of his Crohn's disease was caused by the denial of out-of-cell exercise;

7. Without evidence that the denial of out-of-cell exercise caused a serious medical or emotional deterioration, the deprivation does not rise to the level of unconstitutional punishment;

8. Defendants Booth, Callahan, Milam, Bray and Salmon were deliberately indifferent because they knew Strickland was being deprived of out-of-cell recreation and failed to remedy the deprivation;

9. An intent to punish Strickland by defendants Booth, Callahan, Milam, Bray and Salmon may be inferred from the uncontradicted evidence that there was no penological reason to deny Strickland out-of-cell recreation; and

10. Strickland's state law negligence and gross negligence claims against defendants Mondule and Salmon fail for lack of evidence of causation.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that judgment be entered in favor of the defendants on Strickland's § 1983 claim and his state law claims.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: This 23rd day of June, 2014.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE